# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
### Indianapolis Division

| | | |
|---|---|---|
| IN Re: DALE L. CALDWELL,<br>    *Debtor*. | ) ) ) | Case No. 12-04359-RLM-13 |
| _____ | ) ) | |
| DALE L. CALDWELL,<br>    *Plaintiff*, | ) ) ) | |
| v. | ) ) | Adversary No.   19-50021 |
| RUSHMORE LOAN MANAGEMENT<br>SERVICES, LLC.,<br>    *Defendant*. | ) ) ) ) | |

**FIRST AMENDED COMPLAINT FOR DAMAGES IN A CORE ADVERSARY PROCEEDING AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1(i) AND FOR A FINDING OF CONTEMPT FOR VIOLATION OF THE DISCHARGE INJUNCTION IMPOSED BY 11 U.S.C. § 524(a)(2) and (i);**

## INTRODUCTION

This is an action for damages arising out of the willful violation of: the automatic stay, 11 U.S.C. § 362(a); the mandates of Federal Rule of Bankruptcy Procedure 3002.1(c); the discharge injunction, 11 U.S.C. § 524(i); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 260; the Fair Debt Collection Practices Act, and breach of contract. Specifically, with full knowledge of Plaintiff Dale L. Caldwell's (hereinafter, "Caldwell" or "Plaintiff") bankruptcy proceedings, Defendant Rushmore Loan Management Services, LLC. has illegally collected, and seeks to further collect upon, amounts it claims to be due and owing previously discharged and resulting from its own negligent conduct. In addition, Defendant Rushmore Loan Management

1

Services, LLC. has, without cause or authority, increased the principal balance of Caldwell's mortgage loan.

## PARTIES, JURISDICTION, AND VENUE

1. This is a core proceeding arising in relation to the above-captioned Chapter 13 case and under Title 11 of the United States Code.

2. This Court has both personal and subject matter jurisdiction pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.

3. Federal subject matter jurisdiction is properly founded upon 28 U.S.C. § 1331. Supplemental jurisdiction of the state law claims is conferred by 28 U.S.C. § 1367.

4. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

5. Rushmore Loan Management Services, LLC. (hereinafter, "Rushmore" or "Defendant") is a limited liability company formed under the laws of the State of Delaware, with its principal place of business in California, registered to do business in the State of Indiana.

6. To the extent of the non-bankruptcy claims for relief, this matter is a core proceeding and Caldwell consents to the entry of a final order in this case by the Bankruptcy Judge.

## FACTUAL ALLEGATIONS RELATED TO CALDWELL'S MORTGAGE

7. On October 1, 2002, Caldwell and Wilmington Finance entered into a mortgage loan transaction in the amount of $203,000.00.

8. As part of this transaction, Caldwell executed a Note in favor of Wilmington Finance setting forth the terms of the loan.

9. In addition, Caldwell contemporaneously executed a Security Instrument in favor of Wilmington Finance in his principal residence located at 4059 North Pennsylvania Street, Indianapolis, IN 46205.

10. A true and accurate copy of the Note and Security Instrument are attached hereto as "[Exhibit A](Exhibit A)".

11. The transaction described herein is regulated, in part, and subject to the provisions of 12 CFR § 1026, et seq., also known as Regulation Z, which implements the Federal Truth in Lending Act (15 U.S.C. § 1601, et seq.) and certain provisions of the Real Estate Settlement Procedures Act, as amended (12 U.S.C. § 1601 et seq.)

12. At all times relevant hereto, Rushmore, as servicer and successor in interest to the entities referenced herein, is subject to the provisions and requirements of these Regulations and Code provisions.

13. The Loan taken by Caldwell is a yearly interest mortgage whereby any unpaid principal balance accrues interest at the rate of 6.5% per annum.

**FACTUAL ALLEGATIONS RELATED TO PLAINTIFF'S CHAPTER 13**

14. On April 17, 2012, Caldwell filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code (hereinafter the "Bankruptcy Case").

15. Also on April 17, 2012, Caldwell scheduled Nationstar Mortgage, LLC., (hereinafter "Nationstar") predecessor in interest to Rushmore, as a secured creditor. [[Filing No. 1, at ECF p. 20](Filing No. 1, at ECF p. 20)].

16. Nationstar was served with notice of the commencement of Caldwell's bankruptcy case and its inclusion as a creditor.

17. The notice served upon Nationstar contained specific information about the Automatic Stay imposed by 11 U.S.C. § 362(a) and a warning about the potential consequences

for violating it.

18.     On August 17, 2012, Nationstar filed a Proof of Claim representing a first mortgage in the amount of $236,854.03, with an arrearage of $45,482.28. [Claim Filing No. 9-1]

19.     The Note and Security Instrument controlling the rights and obligations of the parties, beyond the cure provisions of Caldwell's plan, were filed by Nationstar as attachments to it's Proof of Claim.

20.     Caldwell's Chapter 13 Plan provided for monthly payments (via the Trustee) of $2,062.00. [Filing No. 27]

21.     Caldwell's Ch. 13 Plan, as amended, was confirmed via an Order of Confirmation dated May 21, 2013. [Filing No. 51]. This amount was to cover all aspects of Caldwell's mortgage loan obligation to Rushmore and ensure he would be current at the conclusion of his bankruptcy proceedings.

22.     The Order of Confirmation provided that property of the estate shall not vest in the Debtor until the earlier of Debtor's discharge or dismissal of the case, unless the Court orders otherwise.

23.     All post-petition payments made by Caldwell (via the Ch. 13 Trustee) to Nationstar properly funded his post-petition mortgage obligations. These payments were from, and for the benefit of, the estate. *See* 11 U.S.C. § 1306.

24.     On March 18, 2015, Nationstar transferred the servicing rights to Caldwell's [Filing No. 80]

25.     On April 12, 2017, the Trustee filed and served a Notice of Final Cure Payment, in accordance with Fed. R. Bankr. P. 3002.1(f), affirmatively declaring that Defendant's proof of claim, including all pre-petition escrow arrears, had been paid. [Filing No. 84]

4

26. On May 2, 2017, Rushmore filed a Response to the Notice of Final Cure confirming Caldwell had made all requisite payments to cure any previous arrearage and that he was "current on all payments through April 2017. [Filing No. doc]

27. On June 13, 2017, Caldwell an Order of Discharge was entered and Caldwell's bankruptcy case was thereafter closed. [Filing No. 87].

**FACTUAL ALLEGATIONS RELATED TO THE SERVICING OF CALDWELL'S MORTGAGE**

28. Caldwell's mortgage is a "federally regulated mortgage" as defined under RESPA, 12 U.S.C. §2602 (1).

29. As of at least March 18, 2015, Rushmore has been a "servicer" of Caldwell's mortgage as that term is defined by 12 U.S.C. § 2605(i)(2).

29. At the time it assumed the servicing of Caldwell's mortgage, Rushmore was required to perform an audit of the loan history to verify its accuracy.

30. Pursuant to RESPA, if the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall notify the borrower not less than annually of any shortage of funds in the escrow account. 12 U.S.C. § 2609(b).

31. Pursuant to RESPA, any servicer that has established or continued an escrow account in connection with a federally related mortgage loan shall submit to the borrower for which the escrow account has been established or continued a statement clearly itemizing, for each period not greater than every 12 months, the amount of the borrower's current monthly payment, the portion of the monthly payment being placed in the escrow account, the total amount paid into the escrow account during the period, the total amount paid out of the

5

escrow account during the period for taxes, insurance premiums, and other charges (as separately identified), and the balance in the escrow account at the conclusion of the period. 12 U.S.C. § 2609(c)(2)(A)(B).

32. One of the purposes of the notice requirements contained in 12 U.S.C. § 2609 is to prevent a servicer from "sand-bagging" a borrower with an unanticipated escrow arrearage or increase in monthly escrow payment. This is particularly relevant in the context of borrowers in bankruptcy or who are otherwise experiencing financial hardship.

33. Pursuant to Fed. R. Bankr. P. 3002.1(b), all mortgage servicers are required to file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, *including any change that results from an interest rate or escrow account adjustment* (emphasis added). This "Notice of Mortgage Payment Change" is encompassed in Official Form 410S1.

34. On November 30, 2016, Rushmore performed an annual escrow audit and attached an Annual Escrow Account Disclosure Statement to the Notice of Payment Change it filed on January 4, 2017 (hereinafter, "NOPC"). [Filing No. doc]

35. The NOPC was the only one filed during the duration of Caldwell's bankruptcy proceedings.

36. By information and belief, the NOPC is representative of the only escrow analysis performed during the course of Caldwell's bankruptcy.

37. The NOPC advised Caldwell (and the Trustee) of an impending increase to his monthly escrow payment by $5.87; from $645.20 to $651.07.

38. The Annual Escrow Account Disclosure Statement attached to the NOPC also advised Caldwell his escrow account contained *surplus funds of $6,427.30*

39. Thereafter, Caldwell commenced tendering timely and adequate monthly payments in accordance with the NOPC.

40. From November 30, 2016 to entry of the Order of Discharge dated June 13, 2017, a period of nearly seven (7) months, no other notices of payment change were filed or otherwise provided by Rushmore to Caldwell.

41. From the entry of the Order of Discharge on June 13, 2017 to April 4, 2018, a period of nearly 10 months, neither a notice of payment change or annual escrow analysis statement was provided by Rushmore to Caldwell.

42. On or about April 4, 2018, approximately 17 months after the filing of its NOPC, Rushmore provided Caldwell with an "Annual Escrow Account Disclosure Statement".

43. A true and accurate copy of the Annual Escrow Account Disclosure Statement dated April 4, 2018 is attached hereto as "[Exhibit B](Exhibit B)".

44. The Annual Escrow Account Disclosure Statement advised Caldwell of an impending decrease to his "Required Escrow Payment" from $651.07 to $632.55, but also an *increase* to his total payment relative to a "Shortage/Surplus Spread" of $88.23 per month.

45. The Annual Escrow Account Disclosure Statement also notified Caldwell of an escrow account *deficiency* of $3,176.31; $9,603.61 *less* than the balance reported on November 30, 2016.

46. From November 30, 2016 to April 4, 2018, Caldwell made timely and adequate payments pursuant to the NOPC and as otherwise required.

47. In light thereof, Rushmore seeks to recoup an alleged escrow deficiency (a debt obligation) existing during the pendency of Caldwell's bankruptcy proceedings or before.

48. But for the alleged escrow deficiency, Caldwell's mortgage payment (inclusive of

7

principal, interest, and escrow) from July of 2018 onward should not have exceeded $1,985.69.

49. Nevertheless, in accordance with the Annual Escrow Account Disclosure Statement and to avoid being held in default, Caldwell commenced tendering payments equal or in excess of $2,055.40 each month from July of 2018 to today.

50. As a result, from July of 2018 to today, Rushmore has collected upon funds in excess of $616.66 to which it is not entitled.

51. As a result, Rushmore seeks to collect upon additional monies to which it is not entitled.

52. At no time prior to the conclusion of his bankruptcy proceedings did Rushmore give Caldwell, his bankruptcy counsel, or the Trustee, any notice of the existence of an escrow deficiency or impending payment increase resulting therefrom.

53. To the contrary, the Response to Notice of Final Cure filed on May 2, 2017 states "[t]he Debtor has paid the total amount necessary to cure the arrearage and is current on all payments through April 2017" and reflects an escrow *surplus* of $6,427.30.

### FACTUAL ALLEGATIONS REGARDING BORROWER'S EFFORTS TO SEEK INFORMATION AND HAVE ERRORS CORRECTED

54. By letter dated June 12, 2018, Caldwell directed correspondence to Rushmore captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 1) in hopes of obtaining documents necessary to ascertain the cause of the alleged escrow deficiency and payment increase.

55. A true and accurate copy of RFI No. 1 is attached hereto as "[Exhibit C](Exhibit C)".

56. Rushmore received RFI No. 1 on June 18, 2018.

57. On July 31, 2018, Rushmore responded to RFI No. 1 and provided Caldwell with a Payoff Statement and complete Life-of-Loan history showing all credits and debits to his loan account.

58. A true and accurate copy of the Payoff Statement, dated June 20, 2018, is attached hereto as "[Exhibit D](Exhibit D)".

59. The Payoff Statement provided by Rushmore on July 31, 2018 was dated June 20, 2018 and had a "Good-Through Date" of June 30, 2018.

60. Rushmore provide Caldwell with the Payoff Statement after the expiration of the "Good-Through Date."

61. In addition, the Payoff Statement listed an "Escrow/Impound Overdraft" of $1,195.63.

62. Rushmore's continued assertion of a $1,195.63 escrow deficiency mere months after his completion of bankruptcy, coupled with a monthly payment increase, has cause Caldwell actual damage including but not limited to emotional distress.

63. In response to Rushmore's seemingly error, Caldwell directed correspondence captioned "Notice of Error under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 1"), and dated November 20, 2018, for: (i) failing to provide an accurate payoff statement as required by 1026.36(c) of Reg. Z and 12 C.F.R. 1024.35(b)(6).

64. A true and accurate copy of NOE No. 1 is attached hereto as "[Exhibit E](Exhibit E)".

65. By and through NOE No. 1, his previous communications with Rushmore, Caldwell brought the aforementioned error to Rushmore's attention and requested that the errors be corrected.

66. Rushmore received NOE No. 1 on November 23, 2018.

67. A true and accurate copy of Rushmore's response to NOE No. 1 is attached hereto as "Exhibit F".

68. Rushmore's failure to correct the errors identified by Caldwell in NOE No.1, and continued attempts to collect upon the alleged escrow deficiency, have caused him actual damage including but not limited to the time value of those funds and emotional distress.

69. Equipped with ability to more specifically detail its errors, Caldwell directed correspondence to Rushmore captioned "Second Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 2") for: (i) failing to perform an escrow analysis accurately, calculate proper escrow payments, or refund an escrow surplus in violation of 12 CFR 1024.17(c) and 12 USC 2609(a); (ii); failing to provide an accurate payoff statement; and (iii) increasing the principal balance of Caldwell's loan by $1,357.52 without cause or authority.

70. A true and accurate copy of NOE No. 2 is attached hereto as "Exhibit G".

71. Rushmore received NOE No. 2 on or about January 21, 2019.

72. Rushmore has failed to respond within the required seven days (excluding legal public holidays, Saturdays, and Sundays) to the portions of NOE No. 1 and NOE No. 2 relative to the errors asserted under 1024.35(b)(6), ie., failure to provide an accurate payoff statement.

73. To date, Rushmore has failed to properly investigate, correct, and/or respond to NOE No. 1 or NOE No. 2.

74. By failing to adequately investigate and respond to Caldwell's notices of errors, Rushmore has caused actual damage to Caldwell including but not limited to the increased monthly payments he has been forced to pay, the time value of those funds, and the emotional distress resulting therefrom.

**FACTUAL ALLEGATIONS REGARDING**
**RUSHMORE'S VIOLATION OF FED. R. BANKR. P. RULE 3002.1(B)**

75. Among the requirements placed upon a creditor secured by a debtor's residence is that it is required to file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, *no later than 21 days before a payment in the new amount is due.* Fed. R. Bankr. P. 3002.1(b) (emphasis added).

76. Between the time it assumed servicing rights to Caldwell's mortgage, on or about March 18, 2015, Rushmore filed only one Notice under Rule 3002.1, that being 31 months later on January 4, 2017.

77. Rushmore's Annual Escrow Account Disclosure Statement dated April 4, 2018, demonstrates it seeks to recoup several thousand dollars of alleged escrow charges incurred previous to the Order of Discharge dated June 13, 2017 and for which no notice was ever provided.

78. Defendant Rushmore's failure to disclose any alleged deficiency or charges relative to the increase in principal balance was without justification and in blatant disregard of Fed. R. Bankr. P. 3002.

**FACTUAL ALLEGATIONS REGARDING
RUSHMORE'S VIOLATIONS OF FED. R. BANKR. P. RULE 3002.1(G)**

79. As was done here, the Trustee is charged with filing a Notice of Final Cure. It is a representation by the Trustee that a mortgage creditor's claim has been paid and a notice to the creditor that, if it alleges that there is a post-petition default, it must file a response advising the debtor, debtor's counsel, and the trustee of the nature of that default. *See* Fed. R. Bankr. P. 3002.1(f).

80. Here, the Trustee filed a Notice of Final Cure on April 12, 2017.

81. Rushmore filed its Response to Notice of Final Cure on May 2, 2017.

11

82. Within, Rushmore asserted that Caldwell's escrow account contained surplus funds of $6,427.20; funds he was entitled to within 30 days.

83. In contrast to the assertion contained within the aforementioned Response to Notice of Final Cure, and the Life-of-Loan History it later provided, Rushmore was simultaneously seeking to collect alleged escrow deficiencies and additional principal.

84. Rushmore' multiple failures to abide by Rule 3002.1 has caused Caldwell, and his counsel, to expend significant time and resources attempting to trace the charges that appear in the Plaintiff's loan history, mortgage statements, NOPC, and Notice of Final Cure against the original proof of claim and other documents associated with Caldwell's mortgage.

## FACTUAL ALLEGATIONS REGARDING
## RUSHMORE'S VIOLATION OF 11 U.S.C. § 362(a)

85. At all times relevant hereto, Rushmore was subject to the Automatic Stay as set forth in 11 U.S.C. §362(a).

86. As noted herein, the confirmed plan provides that the Plaintiff's property, beyond exemptions, remains property of the estate absent court order, until dismissal or discharge.

87. The monies paid by Caldwell to Rushmore were intended to be applied to his mortgage in accordance with his note and deed to secure debt thus enhancing the value of other property of the estate; specifically, Caldwell's residence.

88. Nonetheless, Rushmore converted, or attempted to convert, property of the estate by increasing the principle balance of Caldwell's loan by $1,357.52 on or about December 31, 2014.

89. An increase to the principal balance of a mortgage loan results in an increase to the amount of interest ultimately paid.

90. Rushmore' actions intentional and undertaken with full knowledge of the Bankruptcy Case and its inclusion as a creditor therein.

91. Rushmore's actions constitute a willful violation of 11 U.S.C. § 362(a). See, *Moncada v. Ga. Heritage Bank (In re Moncada)*, No. 16-21407-JRS, 2016 Bankr. LEXIS 4221 (Bankr. N.D. Ga. Dec. 9, 2016); see also *Mitchell Constr. Co. v. Smith (In Nre Smith)*, 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995); *In re Roche*, 361 B.R. 615 (Bankr. N.D. Ga 2006).

**FACTUAL ALLEGATIONS REGARDING
RUSHMORE'S VIOLATION OF THE DISCHARGE INJUNCTION, 11 U.S.C. § 524(I)**

92. As evidenced by the Life-of-Loan History it provided in response to RFI No. 1, and its attestations to the contrary, Rushmore seeks to collect upon alleged escrow deficiencies and an increased principal existing previous to discharge.

93. As it relates to a mortgage loan deficiency, the premise and purpose behind a Chapter 13 bankruptcy is to allow a debtor who meets all of the requirements thereof to emerge from the case current on the mortgage in all respects.

94. Where, as here, a debtor performs under a confirmed plan and makes all required post-petition payments, said debtor must be current-- unless there has been a misapplication of payments or other error committed by the creditor.

95. Caldwell fully performed under the confirmed plan and made all post-petition payments as required.

96. Despite Caldwell having fulfilled all obligations inherent to his bankruptcy proceedings, Rushmore has collected, and continues to seek to collect upon, an alleged debt obligations pre-dating, and in contravention of, an Order of Discharge.

97. Any alleged escrow deficiency pursued by Rushmore is the result of its own failure to perform an annual escrow analysis (as required by RESPA) or apply payments as contractually obligated.

98. Thus, Rushmore's conduct constitutes a violation of the discharge injunction and, specifically 11 U.S.C. 524(i). See, *Ridley v. M & T Bank (In re Ridley)*, 572 B.R. 352 (Bankr. E.D. Okla. 2017).

**FACTUAL ALLEGATIONS REGARDING RUSHMORE'S VIOLATIONS OF RESPA**

99. Defendant Rushmore is a "servicer" as defined by 12 U.S.C. § 2605(i).

100. Plaintiff's mortgage required his to make payments to the servicer for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges related to his property.

101. 12 U.S.C. § 2609(b)(2) requires a servicer to notify a borrower not less than annually of any shortage of funds in the escrow account.

102. For a period of at least 17 months, Rushmore failed to notify Caldwell of any escrow shortage. This has placed Caldwell in a precarious financial position as Rushmore now seeks payment for the alleged deficiency via an increase to his monthly payment obligation.

103. Rushmore's failure to abide by the mandates of 12 U.S.C. § 2609(b) caused, and continues to cause harm to the Plaintiff.

104. Where a servicer, such as Rushmore, fails to comply with its duties as described by 12 U.S.C. § 2609(b) its claim for any escrow monies it failed to disclosure are appropriately waived. See, *Chase Manhattan Mortg. Corp. v. Padgett*, 268 B.R. 309 (S.D. Fla. 2001); *Craig-Likely v. Wells Fargo Home Mortg. (In re Craig-Likely)*, No. 06-13665, 2007 U.S. Dist. LEXIS 29042 (E.D. Mich. Mar. 2, 2007).

**COUNT I: Violation of the Automatic Stay, 11 U.S.C. § 362(a)**

105. Caldwell restates and incorporates the statements and allegations contained in paragraphs 1 through 104 in their entirety, as if fully rewritten herein.

106. Rushmore's unauthorized and undisclosed increase to Caldwell's principal balance, and misapplication of Caldwell's post-petition mortgage payments constitute a gross violation of the automatic stay, 11 U.S.C. § 362(a)(3).

107. As a result of the above violations of 11 U.S.C. § 362, Rushmore is liable to Plaintiff for actual damages, punitive damages and legal fees.

**COUNT II:    Violation of the Discharge Injunction and 12 U.S.C. § 2609(b)**

108. Caldwell restates and incorporates the statements and allegations contained in paragraphs 1 through 107 in their entirety, as if fully rewritten herein.

109. Defendant Rushmore having failed to comply with its duties as described by 12 U.S.C. § 2609(b) for almost three years, Plaintiff prays that the Court issue an Order deeming that any claim Rushmore may have for alleged escrow deficiencies that should have been communicated to the Plaintiff, is waived.

**COUNT III: Violation of the FDCPA, 15 U.S.C. §1692k**

110. Caldwell restates and incorporates the statements and allegations contained in paragraphs 1 through 109 in their entirety, as if fully rewritten herein.

111. Caldwell is obligated to pay a consumer debt and is therefore, a "consumer" as that term is defined by 15 U.S.C. § 1692a (3).

112. Rushmore is a mortgage servicer and acquired the servicing rights to Caldwell's mortgage after the mortgage loan was in default.

113. Rushmore uses interstate commerce and/or mail in its business. The principal purpose of Rushmore's business is the collection of consumer debts. Rushmore also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party.

114. Rushmore is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a (6).

115. Rushmore's false declaration as to the status and amount of Caldwell's alleged arrearage as contained in its Response To Notice of Final Cure was a false communication to third-parties in furtherance of its efforts to collect a debt.

116. Rushmore's continuing mortgage statements and invoices to Caldwell seeking to collect an alleged escrow deficiency to which it is not legally entitled, or which it is precluded from pursuing, constitutes a false communication and unfair practice in furtherance of its efforts to collect a consumer debt.

117. Rushmore's application of Caldwell's monthly mortgage payments to the alleged escrow deficiency that was undisclosed and otherwise unlawful was a deceptive, unfair, and unconscionable act in furtherance of Rushmore's efforts to collect a consumer debt.

118. Rushmore's conduct constitutes multiple violations of 15 U.S.C. §1692e and 1692f.

119. As a result of Rushmore's violation of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages in the amount of $1,000.00, costs of this action and reasonable attorney's fees as determined by the Court as mandated by 15 U.S.C. § 1692k.

### COUNT IV: Breach Of Contract

120. Caldwell restates and incorporates the statements and allegations contained in paragraphs 1 through 119 in their entirety, as if fully rewritten herein.

121. Rushmore's unilateral and undisclosed increase of Caldwell's principal balance by $1,357.52, and failure to manage the escrow account at issue herein, are in derogation of the Note and Security Instrument.

122. Rushmore's breach of the terms of the Note and Security Instrument has resulted in damage to Caldwell.

123. Caldwell is entitled to recover from Rushmore actual damages, and attorney fees and costs against Rushmore for breach of contract.

**COUNT V: Failure to Reasonable Investigate, Correct, or Respond to Notices of Error in Violation of 12 C.F.R. § 1024.35(e)**

124. Caldwell restates and incorporates the statements and allegations contained in paragraphs 1 through 124 in their entirety, with particular emphasis on paragraphs 56 through 76, as if fully rewritten herein.

125. 12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

126. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

127. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its

determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

128. Rushmore failed to correct the identified errors or conduct a reasonable investigation.

129. NOE No. 1 and NOE No. 2 each meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).

130. Caldwell has alleged by and through NOE No. 1 and NOE No. 2 that Rushmore committed multiple distinct errors pursuant to 12 C.F.R. §1024.35(b)(2) by failing to reasonably investigate or correct the errors identified therein.

131. Rushmore's actions caused actual harm to Caldwell.

132. Rushmore's actions represent a pattern and practice of behavior in conscious disregard for Caldwell' rights and others similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Caldwell prays for the entry of judgment in his favor and against Rushmore for the following:

A. For an Order of Contempt;

B. For an Order precluding Rushmore from submitting or filing notices to obtain retroactive compliance with 3002.1;

C. For an Order precluding Rushmore from asserting, reporting, or seeking to further collect upon any alleged escrow deficiency existing as of the filing of Rushmore's Notice of Payment Change on January 4, 2017 or the "2nd Principal Balance" of $1,357.22;

D. For an Order requiring Rushmore to perform an escrow analysis and properly fund Caldwell's escrow account;

E. For actual damages, including interest, plus all costs and reasonable attorney fees for the allegations contained in Counts I through V;

F. For statutory damages of Two Thousand Dollars ($2,000.00) for each and every violation contained in Count V;

G. For statutory damages of One Thousand Dollars ($1,000.00) for each and every violation contained in Count III;

H. For punitive damages for the violations and willful acts set forth in Counts I and II.

I. For all other relief deemed just and proper.

Respectfully submitted,

/s/ *Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
Fax: (317) 687-2344
tcohron@clarkquinnlaw.com
***Counsel for the Plaintiff***